#### UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.: 21-CR-41(CJN) |
| v. : | |
| : | |
| TERRY BROWN : | |

#### DEFENDANT'S SENTENCING MEMORANDUM

AND NOW, this 24th day of November, 2021, comes Defendant, Terry Brown, by and through his counsel, Terrence J. McGowan, Esquire and Sarah M. Lockwood, Esquire, and respectfully requests this Honorable Court to grant the relief requested, and in furtherance thereof submits this Sentencing Memorandum pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005) and 18 U.S.C. § 3553(a).

## I. PROCEDURAL HISTORY AND BRIEF STATEMENT OF FACTS

### A. Procedural History

On or about January 7, 2021, a Criminal Complaint was filed in the above-captioned matter, charging Defendant Terry Brown with Knowingly Entering or Remaining in any Restricted Building or Grounds without Lawful Authority, With Intent to Impede Government Business or Official Functions, Engaging in Disorderly Conduct on Capitol Grounds, and Violent Entry and Disorderly Conduct on Capitol Grounds.  On January 15, 2021, a Criminal Information was returned charging Mr. Brown with the following: Count 1 - Entering and Remaining in a Restricted Building (18 U.S.C. § 1752(a)(1)); Count 2 - Disorderly and Disruptive Conduct in a Restricted Building (18 U.S.C. § 1752(a)(2)); Count 3 - Violent Entry and Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(A)); and Count 4 - Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)).

On January 28, 2021, Mr. Brown appeared before U.S. Magistrate Judge G. Michael Harvey for his Initial Appearance and entered a plea of not guilty. Magistrate Judge Harvey released Mr. Brown on general conditions of release.

On September 10, 2021, Mr. Brown appeared before this Honorable Court and entered a plea of Guilty to Count 4 of the Criminal Information.  The

remaining counts are to be withdrawn by the United States at the time of sentencing. Pursuant to this Honorable Court's directive, the United States Probation Office submitted a Draft Pre-Sentence Investigation Report ("PSR") to the parties on October 27, 2021.

Sentencing is presently scheduled before this Honorable Court on December 1, 2021 at 2:00 p.m. This Sentencing Memorandum is submitted in advance of sentencing and addresses the factors enumerated in 18 U.S.C. § 3553(a).

**B.     Brief Statement of Facts**

On January 6, 2021, the United States Capitol was closed to the public as the United States Congress met to certify the vote count of the Electoral College of the 2020 Presidential Election. On that same day, former President Donald J. Trump was speaking at a "Save America" rally in Washington, D.C. whereby he claimed that the 2020 Presidential Election was riddled with irregularities and fraud. At some point towards the end of his speech, former President Trump indicated to the crowd that they should go to the Capitol, specifically stating "we are going to walk down Pennsylvania Avenue, I love Pennsylvania Avenue, and we are going to the Capitol. . . ."

On that date, Mr. Brown travelled alone to Washington, D.C. to attend the "Save America" rally in support of former President Trump. He did not travel to

Washington, D.C. with the intent to participate in any riot, disruption, or chaos. Mr. Brown did not know that he would eventually end up at the Capitol. After former President Trump instructed his followers to march on the Capitol, Mr. Brown, swept up in the fervor of the moment, began walking towards the Capitol.

When Mr. Brown finally arrived at the Capitol, the barricades were already knocked down and many people were already inside. Mr. Brown was caught up in the moment and made the unfortunate decision to enter the Capitol. Upon entering, he witnessed several people throwing chairs and trash. Mr. Brown did not participate in any violent or destructive behavior while inside the Capitol. In fact, Mr. Brown can be seen in surveillance video picking up the scattered chairs. At some point, Mr. Brown heard the sound of someone asking for help. He proceeded to the lower level of the Visitor's Center and observed a large group of individuals. He made his way to the front of the crowd to attempt to persuade the crowd to disengage the officers and retreat. Mr. Brown attempted to get the attention of a police officer to ask if he could speak to the crowd. At that moment, Mr. Brown was arrested.

## II. DISCUSSION

### A. In Imposing a Sentence, the District Court must Undertake a Three-Step Process.

After *United States v. Booker*, 125 S. Ct. 738 (2005) and its progeny, Courts are permitted to deviate from the otherwise applicable sentencing guidelines where the guidelines yield a sentence that is inappropriate in light of the § 3553(a) factors. "In the wake of *Booker*, it is essential that [for purposes of sentencing] District Courts make an 'individualized assessment based on the facts presented.'" *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38 (2007)).

"After *Booker*, a District Court must undertake a three-step process in imposing a sentence: (1) calculate the applicable Guidelines range, (2) formally rule on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. §3553(a)." *United States v. Grier*, 585 F.3d 138 (3d Cir. 2009).

### 1. 18 U.S.C. §3553(a) Factors

18 USC §3553(a) requires this Honorable Court to formulate a sentence that is "sufficient, but not greater than necessary", using several specified factors. Generally:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2)    the need for the sentence imposed…;
    (3)    the kinds of sentences available;
    (4)    the kinds of sentence and the sentencing range established…;

   (5) any pertinent (Sentencing Commission) policy statement…;
   (6) the need to avoid unwarranted sentencing disparity…; and
   (7) the need to provide restitution…

18 USC §3553(a).

18 USC §3553(a)(2) mandates that a sentence should "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense…afford adequate deterrence to criminal conduct…to protect the public from further crimes of the defendant; and…to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

   **(a)** **Characteristics of the Defendant**

**Personal Characteristics/Family**

Mr. Brown is a 70-year-old man who was raised in Lebanon, Pennsylvania by his two (2) parents, Kermit Brown and Lillian Marks. Mr. Brown has one (1) sibling, Garry Brown. Kermit and Lillian divorced when Mr. Brown was five (5) years old, and he went to live with his maternal grandparents until he was ten (10) years old. His brother, Garry, remained living with their mother. Lillian re-married Clarence Marks and remained married to him until her passing in 1990. Mr. Brown still maintains a positive relationship with his step-father, often assisting him with household maintenance. Mr. Brown's relationship with his

father was sporadic, but okay. He was mostly raised by his mother, step-father, and grandparents.

Mr. Brown is engaged to Karen Zaporozec and they currently reside together in Myerstown, Pennsylvania. The two have been romantically involved since 2013. Mr. Brown has three (3) adult children from a previous marriage.

**Age**

Mr. Brown is 70 years old with no prior criminal history. Numerous studies have been conducted that directly correlate age with the likelihood of re-offending. Generally speaking, the greater the offenders' age, the less likely they are to re-offend.

The fact that Mr. Brown is 70 years old and has not been previously involved in the criminal justice system is illustrative. That fact alone tends to indicate his criminal activity is a statistical anomaly. While the guidelines do not apply to this case, USSG §5H1.1 indicates, "[a]ge may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

It is extremely unusual for an offender to be charged for the first time at the age of 70. Besides being statistically unusual, it shows that Mr. Brown can be safely maintained in the community with low risk of re-offending.

**<u>Employment-Work Ethic</u>**

Mr. Brown has had a successful and productive employment history. He is currently semi-retired and is working a part-time seasonal position for Jackson Township, Lebanon, Pennsylvania, mowing grass and assisting in grounds maintenance. Prior to his retirement, Mr. Brown worked for the City of Lebanon, Pennsylvania as a public safety code inspector/enforcement. Prior to that employment, Mr. Brown owned and operated two (2) restaurants and bars. From his employment with these bars, Mr. Brown learned the skills necessary to calm and control large crowds. This is what prompted him to attempt to get involved on January 6, 2021, when he sought to speak to the crowd to diffuse the situation in the Visitor's Center.

      **(b)    Need for the Sentence Imposed**

As previously stated, a sentence should "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense…afford adequate deterrence to criminal conduct…to protect the public from further crimes of the defendant." 18 USC §3553(a)(2). It is respectfully

submitted that a sentence of probation in this instance is appropriate to achieve the overall policy goals outlined above. Mr. Brown has shown for 70 years, with exception of one (1) day, that he is able to comply with the law. Since his arrest on January 6, 2021, Mr. Brown has complied with his supervision requirements and has avoided any further criminal conduct.

### (c)   The Kinds of Sentences Available

A violation of 40 U.S. C. §5104(e)(2)(G) is a misdemeanor punishable by up to six (6) months of incarceration and/or a fine of not more than $5,000.00. The Court may exercise discretion in sentencing Mr. Brown after considering the factors contained in 18 U.S.C. §3553.

### (d)   Sentencing Disparity

Mr. Brown has several "co-Defendants" in this case: others included in his Criminal Information whom he had never met prior to being arrested on January 6, 2021. When imposing a sentence, a Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct…" 18 USC §3553(a)(6). Mr. Brown's "co-Defendants" have all plead guilty and have all been sentenced. The sentences received range from twenty-four (24) months' probation to six (6) months of incarceration. Mr. Brown is most similarly situated to co-Defendant, Thomas

Gallagher, who received a sentence of twenty-four (24) months' probation and sixty (60) hours of community service. Much like Mr. Gallagher, Mr. Brown has no criminal record, did not engage in any violent or disruptive behavior, and was seen on video surveillance discouraging destructive behavior (Mr. Gallagher admonished a person intending on throwing a chair, and Mr. Brown picked up a chair that had been thrown).

### B. Acceptance of Responsibility

The correspondence from Mr. Brown attached to this Sentencing Memorandum reveals a meaningful reflection of his misdeeds, not a manufactured response to his current predicament. Moreover, Mr. Brown has manifested remorse in his actions. Despite the Government's anticipated inclusion of a statement made by Mr. Brown to the press on the day following his arrest, after having adequate time to reflect on his spontaneous act of entering the Capitol on January 6, 2021, Mr. Brown is very sorry that he allowed himself to be caught up in the moment, is very remorseful, and certainly would not repeat this conduct were he given a second chance.

### C. Cooperation

Mr. Brown voluntarily sat down with investigators on January 11, 2021. At that time, he provided truthful information to investigators and openly discussed

his involvement on January 6, 2021. He has been cooperative throughout this entire process.

### III.  CONCLUSION

Mr. Terry Brown respectfully submits that a probationary sentence would adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant.  A probationary sentence would also be consistent with sentences imposed on other similarly situated defendants involved with the events of January 6, 2021,

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  November 23, 2021 | */s/ Terrence J. McGowan* <br> Terrence J. McGowan, Esquire <br> Attorney I.D. No. 39129 <br> KILLIAN & GEPHART, LLP <br> 218 Pine Street <br> Harrisburg, PA  17101 |
|  | */s/ Sarah M. Lockwood* <br> Sarah M. Lockwood, Esquire <br> Attorney I.D. No. 328737 <br> KILLIAN & GEPHART, LLP <br> 218 Pine Street <br> Harrisburg, PA  17101 |

# **CERTIFICATE OF SERVICE**

    I, Terrence J. McGowan, Esquire, of the law firm of Killian & Gephart, do hereby certify that I served a true and correct copy of the foregoing Sentencing Memorandum on the following via electronic filing:

Seth Meinero, Esquire
United States Attorney's Office for the District of Columbia
555 4th Street NW
Washington, D.C. 20530

Susan Lehr, Esquire
United States Attorney's Office District of Nebraska
1620 Dodge Street
Suite 1400
Omaha, NE 68102-1506

Dated: November 23, 2021    */s/ Terrence J. McGowan*
Terrence J. McGowan, Esquire
Attorney I.D. No. 39129
KILLIAN & GEPHART, LLP
218 Pine Street
Harrisburg, PA  17101